CITY OF LEWISTON *vs.* INHABITANTS OF HARRISON.

Androscoggin.    Opinion June 2, 1879.

*Pauper supplies.    Settlement.    Husband and wife.    Payment.    Jury,—inquiry by and answer.*

The reception of pauper supplies by a man's wife, when he knows of her necessities, and fails to relieve them, will interrupt the process of his gaining a settlement under R. S., c. 24, § 1, clause 6; and this, although she has temporarily left his home and gone to her mother's without his consent, and against his remonstrance, provided he knows that she is in need, and provided, also, that he has not abandoned the marital relation, but reclaims his rights and removes and lives with her after she has been aided by the town.

Nor, in such case, does the fact that he afterwards paid the town for the supplies furnished her affect the result.

It is the non-reception of pauper supplies, directly or indirectly, during five successive years residence that is required in order to give a settlement; the reception of them interrupts the residence, though they are afterwards paid by the pauper.

In answer to the inquiry by the foreman of the jury what effect, if any, a repayment by Pitts to the town of Naples of the supplies which were furnished his wife would have upon the question, the judge, presiding at *nisi prius*, replied: "It would have no effect; that, if they were pauper supplies when furnished, a subsequent payment of them would not change their character." *Held*, that this, was not error, and did not take from the jury the consideration of the fact of the repayment as bearing upon the necessity of the supplies furnished, or ability of husband to support her.

ON EXCEPTIONS.

ACTION to recover for supplies furnished Nason A. Pitts and his family, as paupers. Legal notice from plaintiff and legal denial from defendant town were admitted. No question was raised as to the poverty of Pitts, or that the supplies were duly furnished.

The plaintiffs proved that, on the 30th day of April, 1860, Daniel Pitts, father of Nason A. Pitts, who was then a minor, had his settlement in Harrison, and it was proved that on that day Daniel Pitts removed with his family, including said Nason, from Harrison to the town of Otisfield, and there remained with his family till after said Nason arrived at twenty-one years of age.

The defendants claimed that Nason A. Pitts acquired a settlement in Otisfield, by five years continued residence after he became of age.

It was claimed by plaintiffs that, in the fall of 1866, Nason A. Pitts' wife received supplies from the town of Naples while she was with her mother, and that these supplies rendered Nason A. Pitts a pauper, and interrupted the settlement he was acquiring at Otisfield.

The defendants denied the fact of the supplies as pauper supplies, and claimed that if any supplies were furnished under the circumstances shown by the evidence, they were not supplies indirectly furnished said Nason, and did not interrupt or affect the settlement he was then gaining in Otisfield.

Upon this question the court instructed the jury as follows: "It is claimed by the learned counsel for the town of Harrison that, if it be true that Nason A. Pitts' wife left him without his consent, and went to her own mother's and was there taken sick, and did actually have help from the town, and actually needed such help; still, if this was unknown to her husband, and he was able and willing to help her, it would not make him a pauper. That is true. I instruct you that such is the law.

" But if he knew her situation, knew that she was destitute, and did not provide her with the necessaries of life, but left her to be cared for by others, and the supplies came from the town, it would make him a pauper. In other words, if a man's wife leaves him in a pet and goes off, and falls suddenly into distress, and is relieved by the town, it will not make him a pauper if he does not know of her distress, and is of sufficient ability and willing to supply her wants.

" But if she does leave him without his consent, and he knows that she is in distress and needs the necessaries of life, and does not supply them, but leaves others to do it, and it is done by the overseers of the poor of the town, then such supplies not only make his wife a pauper, but they also make him a pauper.

" If he is able and willing to supply his wife's wants but does not know of their existence, and they are supplied by the overseers of the poor of a town, such supplies will not make him a pauper; but if he knows of her necessity, (although he has the means to supply her wants) but neglects to do it, and leaves her to be supplied by the overseers of the poor of a town, supplies

thus furnished will constitute pauper supplies indirectly furnished to him, and affect his settlement.

" If, having the ability he refuses to supply her wants, and leaves her to starve, or suffer, or to be supplied by the overseers of the poor; or, he not having the ability, she is thus supplied, then the supplies furnished her are in contemplation of law indirectly furnished to him, and will interrupt the running of the five years residence necessary to acquire a settlement.

" You will apply these rules of law to the circumstances of this family, (Nason A. Pitts and his wife) and determine in the first place whether she received any supplies as a pauper from the town of Naples, and if so, whether by reason of his want of ability he could not supply her, or, having the ability he declined and refused to do it, so that others were obliged to do it; and if you so find, then I instruct you they were supplies indirectly furnished him and would interrupt the running of the five years. Whether they were pauper supplies indirectly received by him, is, you see, partly a question of law and partly a question of fact. I have given you the rules of law by which you are to be guided, and you must determine the facts."

The foreman of the jury inquired what effect, if any, a repayment by Pitts to the town of Naples of the supplies which were furnished his wife would have upon the question, and the presiding judge replied, that it would have no effect; that, if they were pauper supplies when furnished, a subsequent payment for them would not change their character.

The foregoing contains the entire instructions upon this branch of the case.

The verdict was for the plaintiffs; and the defendants alleged exceptions.

*A. A. Strout & M. T. Ludden,* for the plaintiffs.

*S. C. Strout & C. A. Chaplin,* for the defendants, contended that, if a man's wife leaves him, without his consent and against his remonstrance, and goes into a neighboring town, and he knows that she has no means of her own and nothing but the proffered charity of her friends upon which to live, and she is there sup-

plied by the town, that these supplies thus furnished would not make him a pauper, and cited *Berkley* v. *Taunton*, 19 Pick. 490. *Taunton* v. *Middleborough*, 12 Met. 39. *Wareham* v. *Milford*, 105 Mass. 295. *Dixmont* v. *Biddeford*, 3 Maine, 205, (marginal note). *Raymond* v. *Harrison*, 11 Maine, 192. *Eastport* v. *Lubec*, 64 Maine, 264. R. S., c. 24, § 4.

BARROWS, J. Nason A. Pitts had not abandoned his wife when she received supplies from the town of Naples. He was only neglecting her. Though he knew that his wife and mother, with whom he lived, quarreled and had hard talk, and his wife had told him if he did not get a house for her she would not stay, and though he knew that she had no means of support, and was soon to be confined with their first child, he suffered her to go on foot to her mother's in a neighboring town ; he made no arrangement with her mother for her support, and furnished no supplies until after the emergency which made supplies from the town of Naples necessary had arisen. Then he visited her and afterwards removed her, and paid the bill to the town authorities of Naples ; and seems to have continued to live and cohabit with her at various places up to the time of the trial of the cause. The case therefore does not come within the rule laid down in *Raymond* v. *Harrison*, 11 Maine, 190. It was neither an abandonment nor a permanent separation, with or without cause, but a simple failure on the part of the husband to provide for the wife's necessities. The reception of pauper supplies by her under such circumstances made him a pauper, and interrupted the process of his gaining a settlement in Otisfield.

In the Massachusetts and Maine cases cited by defendants, where supplies to the wife were held not to prevent the husband's gaining a settlement in the town where he lived, there had either been an entire abandonment and separation or the supplies were furnished without the man's knowledge of the existing necessity. But here there is no reason apparent why the law as laid down in *Eastport* v. *Lubec*, 64 Maine, 244, and in the cases of *Garland* v. *Dover*, *Sanford* v. *Lebanon*, and *Clinton* v. *York*, there cited, should not be applied.

Defendants' counsel contend that the reception of supplies by a

wife who has left her husband's home, without his consent and in spite of his remonstrance, should be regarded, so far as they tend to affect his settlement, differently from the reception of supplies by minor children who have thus left their father's home. We see no reason for the distinction claimed. Counsel agree that the parent has "a right to restrain the movements of his child and the right to its custody, and ample remedies to assist him in enforcing those rights against the child's will." But see 1 Black. Com., Book 1, c. 15, 444, 445, for a statement of the authority of the husband and his right to control the movements of his wife.

Chancellor Kent says : "As the husband is the guardian of the wife and bound to protect and maintain her, the law has given him a reasonable superiority and control over her person, and he may even put gentle restraints upon her liberty, if her conduct be such as to require it, unless he renounces that control," etc. 2 Kent's Com. (4 ed.), Part IV, 180, § 28.

To enable him to control her movements there is a legal authority almost paternal, and in most cases there is also a personal influence still more powerful to aid him. In any event, so long as the husband sees fit to continue the marital relation, not regarding his wife's ill conduct as sufficient to induce him to abandon her, it is incumbent upon him to see to it that her wants are so supplied that she shall not become a burden upon public charity. So long as he continues to claim the performance of a wife's duties from her, if he knows of her necessities, he must keep her off the town upon peril of incurring pauper disabilities himself.

The only other question is whether there was error in the reply of the judge to the inquiry made by the foreman of the jury, what effect, if any, a repayment by Pitts to the town of Naples of the supplies which were furnished his wife would have upon the question. The judge said "it would have no effect; that, if they were pauper supplies when furnished, a subsequent payment for them would not change their character." So the court in Massachusetts seem to have held in *West Newbury* v. *Bradford*, 3 Met. 428. Such would seem to be the necessary construction and effect of the statute. It is the five years succes-

sive residence without receiving, directly or indirectly, supplies as a pauper that gives a settlement. No exception is made in favor of a man who receives such supplies and afterwards pays for them.

Counsel labor to show that this answer took from the jury the consideration of the fact of the repayment as bearing upon the ability of the husband, and so upon the question whether the supplies when furnished were in truth properly to be regarded as pauper supplies. Not so. Both the inquiry made by the foreman and the answer of the judge proceed upon the hypothesis that the question of the reception of pauper supplies had first been passed upon, and the fact of such reception had been found to be established. We must presume all necessary and proper instructions as to what was requisite to constitute pauper supplies were given. The exceptions do not indicate otherwise.

*Exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN and LIBBEY, JJ., concurred.